Mary Alma TIERNEY, et al., Appellants,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services.

Ava P. TRAHAN, et al., Appellants,

v.

Donald T. REGAN, Secretary of the Treasury, et al.

Nos. 82–1790, 82–2449.

United States Court of Appeals, District of Columbia Circuit.

Argued April 28, 1983.

Decided Sept. 20, 1983.

Bruce M. Fried, with whom Burton M. Fretz, and Michael R. Schuster, Washington, D.C., were on the brief for appel-

lants, Mary Alma Tierney, et al., in 82–1790 and for appellants, Ava P. Trahan, et al., in 82–2449.

Mitchell R. Berger, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief for appellee, Schweiker, Secretary of Health and Human Services in 82–1790 and for appellees Regan, Secretary of the Treasury, et al., in 82–2449.

Before TAMM and MIKVA, Circuit Judges, and VAN PELT,* Senior District Judge for Nebraska.

Opinion for the Court filed by Circuit Judge MIKVA.

Concurring opinion filed by Senior District Judge VAN PELT.

MIKVA, Circuit Judge:

Prompted by allegations of widespread abuse in the Supplemental Security Income (Benefits) program, the Social Security Administration (SSA) implemented a new policy to verify the income and assets of SSI recipients. Specifically, through a mass mailing distributed in May 1982, SSA asked each of four million former and current Benefits recipients to sign a consent form that would allow SSA to obtain copies of otherwise confidential tax return information maintained by the Internal Revenue Service (IRS). This tax return information would then be checked against the strict financial limitations that are imposed on Benefits recipients, thereby allowing SSA to eliminate from the program any individuals who are ineligible because their income or assets exceed the maximum allowable levels.

After these forms were distributed (and in many cases signed and returned by Benefits recipients), but before the IRS released any confidential tax information to the SSA, the appellants, current and former Benefits recipients, initiated two separate actions in district court, one against the SSA and the other against the IRS, *Trahan*

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

*v. Regan,* 554 F.Supp. 57 (D.D.C.1982). In both cases, the appellants were denied relief for a variety of jurisdictional and remedial reasons. These appeals were then filed and briefed separately, but were consolidated for oral argument before this court. Because we hold that any release of tax information based on the consent form included in the May 1982 mailing would violate the confidentiality section of the Internal Revenue Code, we reverse the district court decision that denied the appellants a declaratory judgment against the IRS. That conclusion makes it unnecessary for us to review the holdings made by the district court as to SSA. Thus, we vacate that order and dismiss the appeal without prejudice to the refiling of those claims in district court should such a course of action someday be deemed necessary.

## I. BACKGROUND

The Benefits program, appearing as Title XVI of the Social Security Act, was first enacted in 1972. *See* 42 U.S.C. §§ 1381–1383c (1976 & Supp. V 1981). Administered by the federal government through the Social Security Administration, the Benefits program is designed to provide cash assistance to needy individuals who are aged, blind, or disabled. To be eligible to receive benefits under the program, a person not only must qualify on medical or age grounds, but also must meet financial eligibility requirements established by the SSA pursuant to 42 U.S.C. §§ 1382, 1382a, and 1382b (defining eligibility for benefits based on income and resources). *See* 20 C.F.R. §§ 416.1100–.1266 (1982) (defining income and resources).

To ensure that benefits are granted only to individuals who are financially eligible, Congress has directed the SSA to prescribe regulations for the effective and efficient administration of the program. 42 U.S.C. § 1383(e)(1)(A). Pursuant to this statutory authority, the agency has issued regulations requiring Benefits recipients to provide various types of information and documents that will assist the agency in determining eligibility to receive benefits. *See, e.g.,* 20 C.F.R. § 416.200 (1982) (recipient "must give [SSA] any information ... request[ed] and show [SSA] necessary documents or other evidence to prove that .... these requirements [are met]"). Failure to comply with a request for necessary information can result in suspension of benefits. *See id.* § 416.1322; *see also id.* § 416.714(b) (if requested reports are not filed within thirty days, recipient may be ineligible for benefits). Before any suspension or termination of benefits may occur, however, a recipient is entitled to the full panoply of procedural protections, including adequate notice and a subsequent hearing as specified in both statute and regulation. *See, e.g.,* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.-1336, .1407–.1494.

Despite the abundance of information that must be provided by recipients, the statute also directs that the agency not rely solely on "declarations by the applicant concerning eligibility factors or other relevant facts." 42 U.S.C. § 1383(e)(1)(B). Rather, Congress has required that SSA's determinations of eligibility be based on "relevant information [that is] verified from independent or collateral sources and additional information [that is] obtained as necessary." *Id.* Although the statute does not identify any specific data sources to be used for verification purposes, Congress, apparently believing that the government was among the "independent or collateral sources" of "additional information" to which SSA would turn, explicitly required that other federal agencies cooperate in furnishing information to the SSA. *Id.* § 1383(f).

Thus, it was not surprising when two separate reports issued by the General Accounting Office (GAO) recommended that the SSA verify eligibility for Benefits by using tax information collected by the IRS. *See* Reports by the Comptroller General to the Congress, dated February 4, 1981 (HRD 81–4) and January 12, 1982 (HRD 82–9). These reports estimated that more than $100 million in improper payments to Benefits recipients go undetected each year because many recipients earn too much income or own too many assets to be properly

eligible for benefits. To eliminate this abuse, GAO made two recommendations— one proposing congressional action and the other directed at proposed changes in agency procedures—that would allow the SSA to use tax information to identify ineligible recipients.

The shape of these particular recommendations was dictated in large part by the stringent confidentiality requirements included in section 6103 of the Internal Revenue Code (Code). *See* I.R.C. § 6103 (1976 & Supp. V 1981). Even though SSA's governing statute requires other federal agencies to furnish information to it, the Code's directive is more explicit. Under the general rule of section 6103 of the Code, all "[r]eturns and return information shall be confidential ... except as authorized by this title." *See also id.* § 6103(b)(2) (defining "return information" to include essentially all data associated or identified with a particular taxpayer). The section goes on to list scores of exceptions to this otherwise absolute confidentiality, covering many pages in the United States Code, and including many exceptions that permit disclosure to other federal agencies. *See id.* §§ 6103(c)–(*o*). Not one of these exceptions, however, applies to the SSA for use in determining or verifying eligibility for Benefits. Thus, the GAO recommended that the federal tax laws be amended to permit the IRS to disclose directly to the SSA data concerning the sources and amounts of income and assets of Benefits recipients.

Assuming that congressional amendment of the Code's confidentiality provisions would not be forthcoming—an assumption that has proven true—the GAO reports also recommended an administrative alternative. That alternative was based on subsection 6103(c), the only existing exception to IRS confidentiality that is even arguably applicable in this situation. That subsection provides that the IRS "may, subject to such requirements and conditions as [it] may prescribe by regulations, disclose ... return information ... to such person or persons as the taxpayer may designate in a written request or a consent to such disclosure

...." *Id.* § 6103(c). At least on its face, this statutory exception to otherwise absolute confidentiality suggests that the SSA could obtain tax information concerning Benefits recipients who consent to such disclosure.

The attempted implementation by SSA of this administrative alternative has precipitated the two cases that are now before the court. In May 1982, the SSA mailed to more than four million Benefits recipients a notice-and-consent form, the purpose of which was to provide the agency with written permission, under subsection 6103(c), to obtain otherwise confidential tax information. The notice-and-consent form distributed during this mass mailing consisted of two essential parts, both appearing on a single page. *See* Appendix, *post.* In the first part, labeled "Request for Your Consent for Social Security to Get Your Tax Information," the agency attempted to notify Benefits recipients of the purposes to be served by the requested consent:

> We want the Internal Revenue Service to give us information from your tax records. The Internal Revenue Service will give us the information if you sign the form below.

> We will compare this tax information with what you told us about your income and what you own to make sure we are paying the right amount in your Supplemental Security Income checks.

Then, in an apparent attempt to explain the legal consequences of signing or not signing the consent form, the notice advised recipients that:

> You have a choice about signing the form. But we must have accurate information about your income and what you own to pay your Supplemental Security Income checks. If you do not sign the form, your Supplemental Security Income checks may be affected.

The second part of the form was to be signed by Benefits recipients and returned to their local SSA offices. Almost 3 million of the over 4 million forms were signed and returned to SSA.

At the same time, a teletype was sent to area offices of the SSA explaining to the agency staff the procedures to be followed concerning the notice-and-consent forms. This teletype explained how the forms that were signed and returned would be collected, how those who continued to refuse to consent would be subject to suspension procedures (which include full notice and comment rights), and how refusal to sign the consent form apparently was, by itself, grounds for suspending benefits. The teletype also set forth the language to be used in notifying Benefits recipients that suspension procedures would commence: "Since you have not signed the authorization form, we can not determine if you continue to be eligible for Supplemental Security Income payments. Therefore, we can not pay you any more benefits beginning month/year." *See* Joint Appendix in No. 82–1790 at 18; *see also* 20 C.F.R. § 416.3122 (allowing for suspension of benefits if a recipient fails to provide requested information and documents).

In June 1982, appellants filed a suit against SSA in federal district court [hereinafter referred to as the *Tierney* litigation]. In this lawsuit, appellants sought class certification and presented their case on four separate counts—(1) that the notice and consent form was constitutionally inadequate; (2) that the release of this tax information violated the Privacy Act, 5 U.S.C. § 552a(e)(3) (1976); (3) that the agency should have gone through notice and comment rulemaking pursuant to the Administrative Procedure Act, 5 U.S.C. § 553 (1976), before instituting the new procedures and before requiring consent as a condition of eligibility for benefits; and (4) that the SSA was acting beyond its statutory authority. One day after the complaint was filed, the district court issued a temporary restraining order and conditionally certified the class; after a hearing,

however, the district court granted SSA's motion for summary judgment. In response to a motion for relief pending appeal, the trial judge explained that the case was premature and that he had dismissed the complaint on jurisdictional grounds without reaching the merits.

After the district court's ruling in the *Tierney* litigation, many of the same appellants initiated a separate lawsuit in district court against the IRS [hereinafter referred to as the *Trahan* litigation]. These appellants again requested class certification and brought four separate counts against the IRS—(1) that the authorizations were obtained by threat and coercion, rather than by the consent that I.R.C. § 6103(c) requires; (2) that the notice-and-consent form did not meet the requirements set forth in the applicable IRS regulations, 26 C.F.R. § 301.6103(c)–1(a) (1982); (3) that SSA had failed to establish appropriate procedures for safeguarding the records as required by I.R.C. § 6103(p); and (4) that processing those forms would divert IRS staff from normal tax administration in violation of I.R.C. § 6103(c). A different trial judge dismissed the suit on a variety of remedial and jurisdictional grounds without deciding the class certification motion. In particular, the court held—(1) that it could not issue a declaratory judgment against the IRS because no "actual controversy" existed; (2) that the availability of a civil damage remedy for violations of section 6103 of the Code ** precluded a court from issuing an injunction; (3) that there was no federal question jurisdiction under 28 U.S.C. § 1331 (1976 & Supp. V 1981), because appellants' claims were "insubstantial and frivolous"; and (4) that there was no mandamus jurisdiction under 28 U.S.C. § 1361 (1976). These consolidated appeals followed.

** *See* I.R.C. § 7431 (West Supp.1983). Toward the end of 1982, Congress repealed the former civil damage section, I.R.C. § 7217 (1976), and replaced it with section 7431. *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–278, § 357, 96 Stat. 645 (1982). The district court opinion referred to the former codification. Section 7431 retains the civil damage remedy of section 7217 but changes it in one important respect, by placing liability with the United States rather than with the individuals responsible for releasing the confidential material.

## II. Discussion

Much of the confusion generated by these two cases arises from conflicting signals given by the Congress. In 1972, when enacting the Social Security Amendments that instituted the Benefits program, Congress was concerned with ensuring that financially ineligible individuals not abuse the system. To this end, Congress directed the SSA to obtain as much information as possible to discover such ineligibility. In 1976, when expanding the confidentiality provisions as part of the Tax Reform Act of 1976, Congress made clear that tax information was to be absolutely confidential, subject to certain explicit exceptions. Although Congress created numerous exceptions, none was applicable to the information which SSA now seeks. When Congress speaks with two separate minds, the conflicting goals can present difficult dilemmas.

After carefully examining the many claims raised by appellants, and the various counterarguments made by the two agencies involved in these appeals, we believe that the separate directives of Congress can be heeded simultaneously, albeit not to the full satisfaction of SSA. It is most efficient to start with a discussion of the *Trahan* litigation and the issues surrounding the IRS and the Internal Revenue Code.

### A. Jurisdiction

As a preliminary matter we hold that the district court had subject matter jurisdiction over the *Trahan* litigation under 28 U.S.C. § 1331—the legal claims in this case "arise under" laws of the United States, specifically section 6103 of the Internal Revenue Code. We cannot agree with the district court that the claims are so insubstantial or frivolous as to allow for dismissal. *See Hagans v. Lavine,* 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974) (claims must be " 'so attenuated . . . as to be absolutely devoid of merit' ") (quoting *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904)). The district court appears to have merged the substantiality re-

quirement with a determination on the merits. But, "[j]urisdiction is not lost because the court ultimately concludes that the federal claim is without merit." 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction § 3564, at 429 (1975) (footnote omitted).

▮▮▮ Nor do we find any other bar to judicial review of the *Trahan* case. Benefits recipients who signed the notice-and-consent forms have standing to sue because they are threatened with the loss of a right which section 6103 was designed to protect. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *see also Capital Legal Foundation v. Commodity Credit Corporation,* 711 F.2d 253 at 259 (D.C.Cir.1983) ("standing inquiry focuses on the substance of the agency action, its adverse impact on the plaintiff, and the types of interests that the applicable law is designed to protect"). Moreover, the case is ripe for decision because it appears that the IRS is prepared to release the tax information should we dismiss this case. *See ITT World Communications, Inc. v. Federal Communications Commission,* 699 F.2d 1219, 1232 (D.C.Cir.1983) (ripeness requires an evaluation of " 'the fitness of the issues for judicial decision,' and . . . 'the hardship to the parties of withholding court consideration' ") (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)).

### B. The Consent Requirement of Subsection 6103(c)

▮▮▮ Given that the Code guarantees confidentiality and creates no statutory exception for SSA to verify Benefits eligibility, the agencies have been forced to rely on subsection 6103(c) in order to justify the potential release of confidential tax information. That section provides that the IRS "may, *subject to such requirements and conditions as [it] may prescribe by regulations,* disclose . . . return information . . . to such person or persons as the taxpayer may designate in a written request for or

consent to such disclosure ...." I.R.C. § 6103(c) (emphasis added). Under this proviso, the notice-and-consent form signed by appellants and distributed to millions of Benefits recipients fails to provide the "consent" that is needed before the IRS can release confidential tax return information.

Our holding rests on two independent grounds. First, the notice-and-consent form does not meet the requirements of the IRS' own regulations. Those regulations require that consent "be in the form of a written document pertaining solely to the authorized disclosure." 26 C.F.R. § 301.-6103(c)–1(a) (1982). That document must contain certain specified information, including, "[t]he taxable year covered by the return or return information." *Id.* The notice-and-consent form fails to comply with this requirement. It contains no expiration date and leaves the "taxable year covered" totally open-ended. Because the consent exception authorized by subsection 6103(c) is conditioned upon adherence to the regulations adopted by the IRS, the SSA's attempt to secure wholesale access to recipients' tax information is invalid.

· The second, and more important, basis for our holding is that these forms, which were mailed to 4 million elderly, blind and disabled individuals, cannot solicit the type of knowing and voluntary consent that the statute contemplates before the IRS can release confidential tax information under subsection 6103(c). The purpose of the confidentiality clause of the Tax Reform Act of 1976 was to protect individual taxpayers from unauthorized disclosure of their tax return information. In particular, Congress was concerned about the potential widespread availability of individual tax information to government agencies. *See* SEN. REP. No. 938 (Part II), 94th Cong., 2d Sess. 315–16, *reprinted in* 1976 U.S. CODE CONG. & AD.NEWS 3744–45. The legislative history of section 6103 demonstrates that Congress intended to limit disclosure of tax return information except under narrowly defined circumstances.

Prior to enactment of section 6103, tax returns were available for inspection by government agencies under regulations approved by the President or under executive order. Congress was concerned that this system did not protect the privacy of individual taxpayers adequately. The Senate Finance Committee Report (the Report) explained why a new system was needed:

It has been stated that the IRS probably has more information about more people than any other agency in this country. Consequently, almost every other agency that has a need for information about U.S. citizens, therefore, logically seeks it from the IRS. However, in many cases the Congress has not specifically considered whether the agencies which have access to tax information should have that access.

*Id.* at 316–17, *reprinted in* 1976 U.S. CODE CONG. & AD.NEWS 3746. The Report went on to explain how the Finance Committee determined which exceptions to a broad confidentiality rule were desirable:

The committee has reviewed each of the areas in which returns and return information are now subject to disclosure. With respect to each of these areas the committee has tried to balance the particular office or agency's need for the information involved with the citizen's right to privacy and the related impact of the disclosure upon the continuation of compliance with our country's voluntary assessment system.

*Id.* at 318, *reprinted in* 1976 U.S. CODE CONG. & AD.NEWS 3747 (footnote omitted). The Report specifically addressed the use of tax information by SSA to determine the eligibility of beneficiaries under its authority. *See id.* at 334, *reprinted in* 1976 U.S. CODE CONG. & AD.NEWS 3764 (describing eligibility under Title II of the Social Security Act). According to the Report, "[t]he committee decided to limit strictly the types of returns and return information which would be made available to other agencies on a general basis for purposes other than tax administration or statistical use, and the situations in which they would be made available." *Id.* at 335, *reprinted in* 1976 U.S. CODE CONG. & AD.NEWS 3764. The Re-

port therefore concluded that general use of tax return information by SSA and other agencies was "not warranted." *Id.* Specifically, with regard to SSA, Congress concluded that only tax return information concerning employment taxes would be made available. *Id. See* I.R.C. § 6103(*l*)(1); *see also* H.R.REP. No. 1515, 94th Cong., 2d Sess. 482–83, *reprinted in* 1976 U.S.CODE CONG. & AD.NEWS 4186–87 (conference agreement to adopt Senate version).

In light of this legislative history, the IRS cannot use the consent exception of subsection 6103(c) as a "catch-all" provision to circumvent the general rule of confidentiality established by Congress. Although a knowing and intelligent waiver of rights by Benefits recipients might permit the IRS to release those individuals' tax return information, the form used in this case makes a mockery of the consent requirement. The form itself contained poorly-veiled threats that the recipients' benefits would be terminated if they failed to sign the forms: "If you do not sign the form, your Supplemental Security Income checks may be affected." *See* Appendix, *post.* The form also failed to notify recipients of their procedural rights if SSA decided to terminate their benefits. The language of the form was thus likely to coerce individuals, who depend on social security for their subsistence, into giving up their right to confidentiality. The affidavits filed by appellants dramatize this coercive effect on Benefits recipients. *See* Joint Appendix in No. 82–2449 at 15–26. Without an understanding of their substantive and procedural rights, appellants cannot be said to have consented knowingly and voluntarily to the release of their tax information.

Our holding today is limited. We conclude that the form sent out by the Social Security Administration and signed by almost 3 million individuals does not meet the "consent" requirement of subsection 6103(c) of the Internal Revenue Code. We intimate no views on whether another form—one which contains no veiled threats and sets forth the substantive and procedural rights of Benefits recipients—could result

in knowing and voluntary consent. And, of course, no consent form would be required (barring constitutional difficulties) should Congress create another exception to the confidentiality requirement of section 6103 so that SSA could use tax return information to determine the eligibility of Benefits recipients. *See* Note, *The Constitutional Right to Confidentiality,* 51 GEO.WASH.L. REV. 133 (1982).

## C. *Appropriateness of Declaratory Relief*

The district court in *Trahan* held that the appellants were not entitled to declaratory relief for lack of an "actual controversy." The court also concluded that declaratory relief was precluded by the availability of "administrative remedies"—specifically, the revocation of the consents by Benefits recipients. We disagree.

■ The validity of the signed notice-and-consent forms is not the measure of whether an actual controversy exists. Given that the IRS intends to release this information to SSA, the controversy is of "sufficient immediacy" to warrant issuance of a declaratory judgment. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *see also Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (the controversy must be "real and substantial"). Moreover, as this court said in *President v. Vance,* 627 F.2d 353, 364 n. 76 (D.C.Cir.1980) (quoting E. BORCHARD, DECLARATORY JUDGMENTS 299 (2d ed. 1941)), "a declaratory judgment will ordinarily be granted only when it will either 'serve a useful purpose in clarifying the legal relations in issue' or 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" A declaratory judgment here not only will put an end to the uncertainty and insecurity faced by the appellants, but also inform the government that release of tax information on Benefits recipients may subject it to millions of dollars in damages under I.R.C. § 7431 (West Supp.1983).

■ Appellees suggest that declaratory relief is precluded because appellants failed to show irreparable harm. We disagree. Although a party must demonstrate irreparable injury before obtaining injunctive relief, such a showing is not necessary for the issuance of a declaratory judgment. *Steffel v. Thompson*, 415 U.S. 452, 471–72, 94 S.Ct. 1209, 1221–22, 39 L.Ed.2d 505 (1974).

■ Nor is declaratory relief unavailable because an alternative remedy (revocation of consent) was available to appellants. The Federal Rules of Civil Procedure expressly provide that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." *See* FED.R.CIV.P. 57. Indeed, as the Advisory Committee explained, "declaratory relief is alternative or cumulative and not exclusive or extraordinary . . . . [T]he fact that another remedy would be equally effective affords no ground for declining declaratory relief." FED.R.CIV.P. 57 advisory committee note. In this case, a declaratory judgment and the alternative remedies—revocation of consent and civil damages for unlawful disclosure—are not even "equally" effective. If we refused to grant declaratory relief in this case, appellants would have to abide their consents or risk termination of their benefits. The availability of a $1,000 damage remedy *after* the information is released fails to protect appellants' right to confidentiality. By resolving the controversy over the validity of the consents, a declaratory judgment would protect appellants' rights and inform the IRS that it will be liable for any unlawful disclosure of confidential information based on the notice-and-consent forms. Thus, the district court committed reversible error when it held that the availability of such alternative remedies precluded issuance of a declaratory judgment.

## III. CONCLUSION

The notice-and-consent form relied upon by the IRS to justify release of otherwise confidential tax information does not provide the free and untrammelled consent envisioned by subsection 6103(c) of the Internal Revenue Code. The appellants are entitled to a declaratory judgment that reliance on these forms to justify release of tax information is unlawful and would subject the United States to civil damages under section 7431 of the Internal Revenue Code. Because of our conclusion that declaratory relief is appropriate in *Trahan,* we need not address the appropriateness of mandamus or injunctive relief—issues discussed extensively by the district court and the parties in their briefs before this court. Issuance of a declaratory judgment in *Trahan* also makes it unnecessary for us to decide any of the issues raised in the *Tierney* litigation. Under our ruling today, the IRS cannot release tax information to the SSA on the basis of these notice-and-consent forms. These forms are thus rendered useless to SSA. We therefore vacate the order of the district court in *Tierney* without prejudice to any of the parties if these matters should arise again. We vacate those portions of the *Trahan* order and opinion pertaining to injunctive relief and mandamus. We reverse the district court in *Trahan* as to subject matter jurisdiction and the availability of declaratory relief, and hold that the notice-and-consent forms do not meet the requirements of subsection 6103(c). We remand to the district court with instructions for it to issue a declaratory judgment in appellants' favor.

*It is so ordered.*

## APPENDIX

## EXHIBIT A

62-16-4474

FOR SSA ONLY

☆ U.S. GOVERNMENT PRINTING OFFICE: 1982 — 370-547

### REQUEST FOR YOUR CONSENT FOR SOCIAL SECURITY
### TO GET YOUR TAX INFORMATION

Please read, sign and date this form and return it in the enclosed envelope within 10 days.

We want the Internal Revenue Service to give us information from your tax records. The Internal Revenue Service will give us the information if you sign the form below.

We will compare this tax information with what you told us about your income and what you own to make sure we are paying the right amount in your Supplemental Security Income checks.

82- 3004

READ BEFORE SIGNING: This form must be signed by the person named below or a legal guardian for that person who was appointed by a court. If the person named below is a child under age 18, a parent who lives with the child can sign the form.

You have a choice about signing the form. But we must have accurate information about your income and what you own to pay your Supplemental Security Income checks. If you do not sign the form, your Supplemental Security Income checks may be affected.

REMOVE STUB AT THIS PERF BEFORE MAILING

### AUTHORIZATION FOR DISCLOSURE OF INFORMATION

62-16-4474

EMMA  ESROIN

I authorize the Internal Revenue Service to disclose to the Social Security Administration all tax information from any information return relating to my receipt of income other than wages for all tax years beginning January 1, 1980, and subsequent. I understand that this information will be used to verify my entitlement to Supplemental Security Income benefits. I also understand that this information will be kept confidential as required by the Social Security Act, the Privacy Act of 1974, and Section 6103 of the Internal Revenue Code.

Signature _____     Date _____
If not the person named above, check one: I am the legal guardian ( ), parent with custody of child under 18( ), other ( ).

If you sign by mark, two witnesses to the signing who know you must also sign below, giving their full addresses.

FORM SSA-7006 SM (3-82)

VAN PELT, Senior District Judge, concurring:

I reluctantly concur with the opinion of the Court. My concern is not with the logic or thought expressed in Judge Mikva's opinion. Instead, I am disturbed that the present state of the law does not allow the Social Security Administration (SSA) access to the tax records in question.

This type of information is necessary to maintain the integrity of the social security system. As indicated in the opinion, there may be available to Congress the creation of another exception to the confidentiality requirement of Section 6103 which would give the SSA the tax return information it needs, and I believe deserves. Such congressional authority should be a matter of

high priority in order to determine the amount of improper, undetected payments to benefit recipients which are made each year and the extent to which such recipients are defrauding, not only our government, but also the honest taxpayers who have to pay more than their share of taxes to make up for the loss created by these intentional delinquencies.