Ava P. TRAHAN, et al., Plaintiffs,

v.

Donald T. REGAN, et al., Defendants.

Civ. A. No. 82–3004.

United States District Court,
District of Columbia.

Nov. 18, 1985.

Bruce M. Fried, Washington, D.C., for plaintiffs.

Edith Marshall, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

Currently before the Court is plaintiffs' application for an award of attorneys' fees and costs. For the reasons stated below, plaintiffs are awarded $25,743.75 in fees and $80 in costs.

## I. THE FACTUAL BACKGROUND

This case concerns a notice mailed by the Department of Health and Human Services to Supplemental Security Income (SSI) recipients. The mailings asked approximately four million SSI recipients to sign a consent form allowing the Social Security Administration to obtain confidential tax information from the Internal Revenue Service (IRS). The forms stated, in part:

> You have a choice about signing the form. But we must have accurate information about your income and what you own to pay your [SSI] checks. If you do not sign the form, your [SSI] checks may be affected.

The initial suit challenging the mailing was dismissed on a number of grounds. *See Tierney v. Schweiker,* No. 82–1638

(D.D.C. July 6, 1982). The IRS thereafter received consent forms signed by SSI recipients, including the plaintiffs. Plaintiffs then filed the instant suit to block any disclosure by the IRS. The Court granted defendants' motions to dismiss for lack of subject-matter jurisdiction and failure to state a claim. *Trahan v. Regan*, 554 F.Supp. 57 (D.D.C.1982).

The Court of Appeals reversed this Court's ruling and, upon reaching the merits, found that the consent forms were invalid because they were in violation of IRS regulations and because they could not result in a knowing waiver of confidentiality rights. *Tierney v. Schweiker*, 718 F.2d 449, 445–57 (D.C.Cir.1983). Plaintiffs then applied for attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.[1]

## II. DISCUSSION

### A. *Application of 1985 Amendments to the EAJA*

Sections of the EAJA which are relevant to this application were amended on August 5, 1985. *See* Equal Access to Justice Act Amendments, Pub.L. No. 99–80, 99 Stat. 183 (1985). These amendments apply to "cases pending on or commenced on or after" August 5, 1985. *Id.* § 7(a). The government argues that "cases pending" refers only to cases pending on their merits and not to pending attorneys' fees applications.

The "plain meaning" of the statute indicates that the amendments apply to this case. The statute does not qualify "cases pending" so as to exclude pending fee ap-

plications. Indeed, where a statute is concerned solely with fee applications, "cases pending" presumably would be commonly understood to include pending fee applications. As the Supreme Court recently noted:

> [D]eference to the supremacy of the legislature, as well as recognition that congressmen typically vote on the language of a bill, generally require us to assume that "the legislative purpose is expressed by the ordinary meaning of the words used." Going behind the plain language of a statute in search of a possibly contrary congressional intent is a step to be taken cautiously even in the best of circumstances.

*United States v. Locke*, —— U.S. ——, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985); *see also Inner City Broadcasting Corp. v. Sanders*, 733 F.2d 154, 158 (D.C.Cir.1984).

The Court acknowledges, however, that some of the legislative history contradicts this "plain meaning." The House Report and floor debate on H.R. 2378, the EAJA amendments bill, indicate some confusion as to the effective date provisions.[2] During debate on the amendments, one key supporter of H.R.2378 stated:

> I would like to clarify the effective date provisions of H.R.2378 and the relationship of these provisions with the original act. Cases which were pending on October 1, 1984, including fee application proceedings[,] would be governed by the original act, provided that the time to file the fee application expired before the date of enactment of this bill.

---

1. The Court believes that this fee dispute has commanded an unreasonably large amount of the Court's time and has made a mockery of the Supreme Court's admonition that, "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Prior to oral argument, the parties had filed dozens of documents relating to the application. Ironically, these extensive filings failed to address major aspects of the attorneys' fees question, and at oral argument the Court was obliged to request additional memoranda.

2. Generally, "even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history," and committee reports may be "far from authoritative as an expression of congressional will." *Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 118, 120, 100 S.Ct. 2051, 2061, 2062, 64 L.Ed.2d 766 (1980). The Court believes, however, that these parts of the legislative history assume greater significance because of the paucity of legislative history on the 1985 amendments. The House Report was the only committee report on the bill, and floor remarks in both Houses were brief.

131 Cong.Reg. H4762 (daily ed. June 24, 1985) (statement of Rep. Kastenmeier, Chairman of the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Committee on the Judiciary). The House Report on the bill, on the other hand, states:

> The changes which are made by H.R. 2378 which merely clarify existing law are retroactive, and apply to matters which were pending on, or commenced on or after October 1, 1981. However, changes which are made by H.R.2378 and which expand or otherwise change existing law shall take effect on the date of enactment and shall apply to matters pending on or commenced after that date.

H.R.Rep. No. 120, 99th Cong., 1st Sess. 11 (1985), U.S.Code Cong. & Admin.News 1985, pp. 132, 139.

The 1985 amendments relevant to this case concern the meaning of "position of the United States" and "substantially justified." These phrases were part of the original EAJA, and the legislative history reveals that the 1985 amendments affecting these phrases were intended to "clarify" interpretation of existing law. As such, under the standard articulated in the House Report, these clarifications are applicable to this case.

■ The Court thus concludes that, through a "plain meaning" reading of the statute or by reference to legislative history, the 1985 amendments to the EAJA that are relevant to this case will govern assessment of the instant attorneys' fees application.

### B. *The EAJA Standard*

As amended, the EAJA provides:

[A] court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ..., including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Accordingly, if a party seeking attorneys' fees can establish that he is a "prevailing party," the government then can avoid an attorneys' fees award only by showing that its actions were "substantially justified" or that "special circumstances" counsel against an award.

### 1. *"Prevailing Party" Requirement*

The EAJA does not define "prevailing party" generally,[3] but the phrase has been construed expansively. The Supreme Court recently articulated a typical construction:

> [P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. This is a generous formulation....

*Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

■ Here defendants contend that plaintiffs' success was limited because plaintiffs sought injunctive, declaratory, mandamus and damages relief and received only declaratory relief. Nonetheless, plaintiffs sought, and received, a judicial decree prohibiting the release of confidential tax information on the basis of the consent forms. In that sense, plaintiffs succeeded on a "significant issue" that achieved "some of the benefit the parties sought in bringing suit"; as such, plaintiffs clearly are "prevailing parties."

### 2. *"Position of the United States"*

Prior to the 1985 amendments, the law in this circuit with respect to "the position of

---

**3.** The 1985 amendments do define "prevailing party" for purposes of eminent domain proceedings, Pub.L. No. 99–80, § 2(c)(2)(H), but this amendment is intended only to "clarify the status of condemnation actions under the Act" and does not affect the "expansive view" of "prevailing party" in non-condemnation proceedings. H.R.Rep. No. 120, 99th Cong., 1st Sess. 18, 20 (1985), U.S.Code Cong. & Admin.News 1985, pp. 146, 148.

the United States" was set by *Spencer v. National Labor Relations Board,* 712 F.2d 539 (D.C.Cir.1983). *Spencer* held that "'the position of the United States,' for purposes of the [EAJA], means the arguments relied upon by the government in litigation." *Id.* at 557.

This construction was overturned by the 1985 amendments, however:

"[P]osition of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based....

Pub.L. No. 99–80, § 2(c)(2)(B), *amending* 28 U.S.C. § 2412(d)(2).[4] The House Report, moreover, specifically rejects the "narrow interpretation" of *Spencer* and states that the proper construction "is much broader than the litigation position, and includes actions and omissions of an agency which formed the basis for the adversary adjudication." H.R.Rep. No. 120, at 11 & n. 19, U.S.Code Cong. & Admin.News 1985, p. 139, 140. The Report adds: "An omission which may be relevant includes the failure of an agency or its staff to act based on a statutory, regulatory, or constitutional duty." *Id.* at 11.

The EAJA does not define when an action is "substantially justified." The 1985 House report, however, states:

Several courts have held correctly that "substantial justification" means more than merely reasonable. Because in 1980 Congress rejected a standard of "reasonably justified" in favor of "substantially justified," the test must be more than mere reasonableness.

H.R.Rep. No. 120, at 9, U.S.Code Cong. & Admin.News 1985, p. 138. The "substantially justified" determination is to be made "on the basis of the record ... which is made in the civil action for which fees and other expenses are sought." Pub.L. No. 99–80, § 2(b), 99 Stat. 183, 184 (1985).

Thus, this Court must look to the "record ... made in the civil action," as delineated in *Tierney v. Schweiker,* 718 F.2d 449 (D.C. Cir.1983), to determine whether the acts and omissions of the IRS which led to the filing of this suit were "substantially justified."

The *Tierney* court found that the consent forms were the result of General Accounting Office reports that urged use of tax information to verify eligibility for SSI benefits. 718 F.2d at 451. The reports recommended that federal tax laws be amended expressly to permit access to tax files of SSI recipients or that action proceed administratively under Section 6103 of the Internal Revenue Code, which allows IRS disclosure upon taxpayer consent. *Id.* at 452.

The *Tierney* court held that the consent forms eventually developed failed to comply with IRS regulations. 718 F.2d at 455. In addition, the court ruled that the forms could not achieve the "knowing and voluntary" consent contemplated by Section 6103(c). *Id.* The court concluded that the forms "contained poorly-veiled threats that the recipients' benefits would be terminated if they failed to sign the forms" and thus made "a mockery of the consent requirement." *Id.* at 456.

On the other hand, the court acknowledged that, "At least on its face," Section 6103(c) appeared to permit obtaining tax information by use of consent forms. *Id.* at 452. The court also noted that its holding was "limited" and added, "We intimate no views on whether another form—one which contains no veiled threats and sets forth the substantive and procedural rights of Benefits recipients—could result in knowing and voluntary consent." *Id.* at 456.

The government advances the novel argument that, because the IRS had not tak-

---

**4.** Prior to the 1985 amendments, many courts had rejected the "litigation position" construction and adopted the "underlying action" approach ratified in the 1985 amendments. *See Rawlings v. Heckler,* 725 F.2d 1192, 1195–96 (9th Cir.1984) (adopting latter construction and cit-

ing cases). In this sense, the 1985 amendments merely "clarified" the law and did not change it outright. *See, supra,* discussion of House Report standard for application of 1985 amendments to pending proceedings.

en "official" action on the forms, there was no "position of the United States" in this case. The *Tierney* court stated, however, that the IRS appeared "prepared to release the tax information" under the forms. 718 F.2d at 454. In addition, the 1985 amendments to the EAJA specifically define "position of the United States" to include failures to act; here the IRS failed to reject improper consent forms. Defendants' reading of "position of the United States" would prevent the award of attorneys' fees in many cases in which declaratory or injunctive relief is sought, since such actions often are litigated before the government takes "official action." There is no sign that Congress intended this restrictive result.

 The determination of whether the IRS' "position" in this case was substantially justified presents a closer question. The Court concludes that the position was not substantially justified. The legislative history of the 1985 amendments strongly suggests that the EAJA is intended to create "an incentive for careful agency action." H.R.Rep. No. 120, at 12, U.S.Code Cong. & Admin.News 1985, p. 141. Among the types of agency conduct the EAJA is designed to address is an agency's failure to act "based on a ... regulatory ... duty." *Id.* at 11. Here the IRS was prepared to release tax information pursuant to consent forms which violated clear regulatory requirements. The deterrent purpose of the EAJA thus is well served by finding the IRS action not substantially justified.[5]

### C. *Amount of the Award*

Once it is established that a party is entitled to attorneys' fees under the EAJA, the court must determine the amount of the award. The standard is as follows:

'[F]ees and other expenses' includes ... reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates

---

5. In addition, the EAJA should be construed to provide a greater "incentive for careful agency action" where, as here, the agency's conduct

for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee).

28 U.S.C. § 2412(d)(2)(A), *reenacted by* Pub.L. No. 99–80, § 6(a).

In this case, five attorneys seek compensation. Bruce M. Fried claims a total of 206.75 hours spent on the case; Eileen P. Sweeney claims 17.25 hours; Michael R. Schuster claims 86 hours; Evelyn Brody claims 147.50 hours; and Gill Deford claims 10.75 hours. Each attorney requests compensation at the $75-per-hour rate with a 20 percent upward adjustment, for a final per-hour rate of $88.50.

In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), the Court stated, "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This equation results in a "lodestar" figure that is calculated for each applicant. *Murray v. Weinberger*, 741 F.2d 1423, 1427 (D.C.Cir. 1984). The fee applicant bears the burden of submitting evidence supporting the hours worked and the rates claimed. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

#### 1. *"Reasonable Hourly Rates"*

Calculation of the "reasonable hourly rate" depends upon whether the applicant works for a private law firm or a public interest group. For the former, a reasonable rate is the firm's "established billing rate[ ]" for that attorney. *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 24 (D.C.Cir. 1984). For the latter, the reasonable rate is derived from "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The community's

involves a large number of people and affects their assertion of statutory rights.

"currently hourly rates" should be used. *Murray v. Weinberger*, 741 F.2d at 1427–28 n. 20. Applicants must produce evidence sufficient to allow the Court to make an objective assessment of the rate. *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325 (D.C.Cir.1982) (per curiam).

Here the applicants have met the burden set by *National Association of Concerned Veterans.* The only private attorney is Evelyn Brody, and the applicants have produced evidence showing the per-hour rate charged for her time by her firm. The applicants also have produced affidavits and other evidence relating to the experience of each public-interest attorney and the hourly rates charged in this legal community for similar work. On the basis of this evidence, the Court concludes that $75 per hour is a reasonable rate for each applicant.[6]

### 2. *Upward Adjustment of Hourly Rate*

The applicants seek a 20 percent upward adjustment of the hourly rate to compensate for cost-of-living increases, the quality of the representation, and the successful result.

Recent cases indicate that upward adjustments are warranted only in cases of "exceptional success." *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The Court cannot conclude that this was a case of "exceptional success." Nor have the applicants met the "heavy burden" placed upon those "seeking an enhancement of the presumptively reasonable lodestar figure." *Murray v. Weinberger*, 741 F.2d at 1430. The Court

also concludes that no cost-of-living increase is warranted. In reenacting the EAJA this year, Congress retained the $75-per-hour "cap" on rates, thus establishing that $75 per hour remains a reasonable rate. The Court therefore declines to adjust the $75 rate for inflation.

### 3. *"Hours Reasonably Expended"*

The number of hours reasonably expended is gauged by "evaluating the total number of hours expended and disallowing unproductive time or time spent on unsuccessful claims; hours that are 'excessive, redundant, or otherwise unnecessary' must be excluded from the lodestar calculation." *Murray v. Weinberger*, 741 F.2d at 1427. Furthermore, hours "are not reasonably expended if an attorney duplicates work done earlier by another attorney, if an attorney takes extra time due to inexperience, or if an attorney performs tasks that are normally performed by paralegals, clerical personnel, or other non-attorneys." *Action on Smoking and Health v. Civil Aeronautics Board*, 724 F.2d 211, 220–21 (D.C.Cir.1984). The Court "necessarily has discretion" in making these determinations and may exclude specific hours or simply reduce the award. *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941.

The applicants herein have met the requisite evidentiary burden by providing affidavits detailing time spent by each attorney. Defendants raise vigorous arguments with respect to some of the hours billed by the fee applicants.[7]

### a. *Time Spent on Consolidated Appeal*

Defendants argue that the fee applicants seek to bill hours spent on the consolidated appeal of this case and *Tierney v. Schweik-*

---

**6.** Defendants challenge the reasonableness of this rate only with respect to Ms. Brody. Defendants assert that some of her work was of "an essentially paralegal nature" that should be compensated at a lower rate. However, where, as here, the fee applicant has substantiated her claims with specific evidence, "the Government must either accede to the applicant's requested rate or provide specific contrary evidence." *National Association of Concerned Veterans*, 675 F.2d at 1326. Defendants here have not produc-

ed "specific contrary evidence," so the Court rejects this challenge.

**7.** The applicants deride the government's objections as "nit-picking." As the Court has pointed out, however, the government is *required* to make specific objections if it hopes to mount a successful challenge to a fee application. What the applicants criticize as "nit-picking" is no more than the government's effort to comply with the requirements of governing case law.

*er.* Judge Gesell rejected the *Tierney* fee application. *See Tierney v. Heckler,* No. 82–1638 (D.D.C. Mar. 27, 1984). The Court agrees that the fee applicants may not have two opportunities to recover for time spent preparing issues presented in *Tierney.* Accordingly, the Court will use its "equitable judgment," *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941, and reduce the hours billed for the consolidated appeals by 50 percent. As such, Mr. Fried's total hours are reduced by 17.25 hours; Ms. Sweeney's total hours are reduced by 1.75 hours; Mr. Schuster's total hours are reduced by 6.25 hours; and Ms. Brody's total hours are reduced by 7.5 hours.

#### b. *Preparation of Fee Application*

The original fee application in this case moved to consolidate this case with *Tierney v. Schweiker.* That motion was rejected by Judge Gesell. *Tierney v. Heckler,* No. 82–1638 (D.D.C. Feb. 9, 1984). Because the legal issues presented by the consolidation motion differ from those presented by a fee application, and because the consolidation motion was unsuccessful, the Court concludes that reduction of hours claimed for the initial fee application is required. Since the applicants do not specify which hours were spent on the motion to consolidate, the Court will make a 35 percent reduction. Thus, Mr. Fried's time is reduced by 6.25 hours; Mr. Schuster's time is reduced by 2.25 hours; and Ms. Brody's time is reduced by 3.50 hours. Mr. Deford's 10.75 hours will not be reduced because his work occurred after Judge Gesell's ruling.

#### c. *Issues Not Reached on Appeal*

Defendants contend that, since the Court of Appeals did not reach some of plaintiffs' arguments, the applicants should not receive compensation for time spent on those arguments. The Court rejects this contention, however, because "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for re-

ducing a fee." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940.

#### d. *Unsuccessful Claims*

Defendants argue that the Court should exclude hours billed on plaintiffs' efforts to obtain a temporary restraining order and class certification, both of which were unsuccessful. The Court finds these efforts "unrelated to the claims on which [plaintiffs] succeeded" in that they involved legal theories discrete from plaintiffs' claims on the merits. *Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1939–40; *see also Action on Smoking and Health,* 724 F.2d at 216. Since these claims were unsuccessful, they should be excluded from the "lodestar" calculus. *Laffey v. Northwest Airlines, Inc.,* 746 F.2d at 13. The 17.5 hours billed by Mr. Fried and the 4.50 hours billed by Mr. Schuster on these issues thus are eliminated from the award.

#### e. *Unnecessary, Excessive, or Duplicative Billing*

Defendants make several arguments as to allegedly unnecessary, duplicative, or excessive billing by the applicants. Defendants first point to time billed by several of the applicants in "moot-courting" Mr. Fried, the lead counsel, prior to oral arguments before the Court of Appeals, and in "debriefing" after the argument. The Court, however, cannot find that, where the oral argument will address issues raised by two separate cases, this type of intensive preparation is unnecessary, duplicative, or excessive.

The defendants' second objection is to the considerable amount of time billed for conferences among the applicants. As a general rule, some consultation with co-counsel is appropriate. The Court believes, however, that reduction of the time billed for this purpose is warranted. First, many of the billing entries do not indicate the purpose of the conferences, which may have been unnecessary or which may have concerned "unsuccessful" claims. Second, the Court believes that the amount of time spent on conferences was excessive.[8]

---

**8.** For example, about 40 percent of the hours billed by Ms. Sweeney were spent in consulta-

Again exercising its "equitable judgment," the Court will make a 35 percent reduction of hours billed for conferences. Mr. Fried's hours are reduced by 5.5 hours; Ms. Sweeney's, by 1.75 hours; Ms. Brody's, by 7 hours; and Mr. Schuster's, by 3.25 hours.

Defendant's third objection is to 35 hours billed by Ms. Brody for editing Mr. Fried's draft of the appellate brief. Defendants argue that it is excessive for a first-year associate like Ms. Brody to spend so much time editing the brief of the lead attorney in the case. The Court agrees. Ms. Brody's affidavit does not indicate why editing the brief required such an inordinately large time commitment. Accordingly, the Court reduces Ms. Brody's time by 23 hours, on the theory that a suitable "editing" job on an appellate brief should take no longer than two full "billing" days.

The Court's independent review of the fee application leads it to conclude that the time billed for preparing the supplemental fee application is excessive and should be reduced. Together Mr. Fried and Mr. Deford billed 20 hours to prepare an 11-page document with several supporting affidavits. The Court questions the use of two attorneys for this purpose, and further notes that Mr. Deford's affidavit makes it clear that he spent time on research which could not in any event yield evidence relevant to this application.[9] The Court concludes that a 50 percent reduction for time billed on the supplemental application is warranted. Mr. Fried's hours thus are reduced by 4.75 hours, and Mr. Deford's hours are reduced by 5.5 hours.

### f. Miscellaneous Reductions

Several other billing entries require attention. The Court concludes that Ms. Brody should not be compensated for the bill of 2.25 hours spent on "dividing up" the appellate brief among the attorneys. This billing is excessive and involves work that is "normally performed by paralegals, clerical personnel, or other non-lawyers." *Action on Smoking and Health,* 724 F.2d at 221. For the same reason, the Court excludes 4.75 hours billed by Mr. Schuster for the clerical work of "arrangement, photocopying, and collation" of the appendix to the appellate brief. Finally, and for self-evident reasons, the Court excludes from Mr. Fried's total one-half hour billed for a telephone conversation with Judge Gesell's law clerk.

### 4. Individual Lodestars

Having determined the reasonable hourly rate and the hours reasonably expended on the litigation, the Court will calculate the lodestar for each attorney. The 206.75 hours originally claimed by Mr. Fried are reduced by 51.75 hours, for a total of 155 hours. Mr. Fried's lodestar thus is $11,625. Ms. Sweeney's requested total of 17.25 hours is reduced by 3.50 hours for a new total of 13.75 hours, giving Ms. Sweeney a lodestar of $1,031.25. Ms. Brody's request for 147.50 hours is reduced by 43.25 hours, yielding a new total of 104.25 hours and a lodestar of $7,818.75. Mr. Schuster's original total of 86 hours is reduced by 21 hours, yielding a new total of 65 hours and a lodestar of $4,875. Mr. Deford's request for 10.75 hours is reduced by 5.50 hours, yielding a new total of 5.25 hours and a lodestar of $393.75.

### D. Request for Costs

The applicants seek reimbursement for a $10 filing fee, $5 appeal fee, and $65 docketing fee incurred for this litigation. Defendants raise no objections to these fees, and the Court concludes that the $80 costs request should be granted.

---

tion with co-counsel, and 25 of the 38 billing entries made by Ms. Brody involved conferences. By the Court's rough calculation, more than 50 billed hours were occupied in consultations.

**9.** Mr. Deford obtained exhibits relating to per-hour rates charged by members of the Los Angeles and Beverly Hills Bar Associations. These documents are irrelevant to this case since evidence as to a "reasonable hourly rate" must relate to the community in which the services were rendered. *Murray v. Weinberger,* 741 F.2d at 1427–28 n. 20. Information on California rates thus is of no import in ascertaining a "reasonable rate" in this case.