Commonwealth *v*. Burgess.

COMMONWEALTH *vs*. RUSSELL BURGESS.
COMMONWEALTH *vs*. DONALD RICCIO.

Suffolk. Middlesex. September 4, 1997. - December 8, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Self-incrimination, Supremacy of Federal law, Federal preemption. *Taxation,* Income tax returns. *Jurisdiction,* Superior Court. *Superior Court,* Jurisdiction.

Discussion of the Supreme Court's decision in *Doe* v. *United States,* 487 U.S. 201 (1988). [210-213, 215-217]

An order of a Superior Court judge, compelling two criminal defendants to execute Internal Revenue Form 8821 to "direct" the Internal Revenue Service to release their tax returns to an assistant attorney general of the Commonwealth and ordering the form to reflect that the requesters signed the form under court order without acknowledging any obligation to have filed tax returns or the existence of any tax returns, did not violate the defendants' privilege against self-incrimination, where any evidence of the form itself or the act of executing it was nontestimonial or insufficiently testimonial for purposes of the Fifth Amendment to the United States Constitution. [213-215]

This court concluded that, in circumstances in which a criminal defendant is compelled by court order to execute a certain form directing the Internal Revenue Service to release his tax returns to an assistant attorney general of the Commonwealth and in which the assertions on the form are merely incidental to and implicit in the compelled act of production *and* will not be relied on by the Commonwealth in any prosecution, then such assertions are insufficiently testimonial to warrant assertion of the privilege against self-incrimination set forth in art. 12 of the Massachusetts Declaration of Rights. [217-221]

Discussion of the broader protection against self-incrimination of art. 12 of the Massachusetts Declaration of Rights than that afforded by the Fifth Amendment to the Constitution of the United States. [217-219]

A Superior Court judge had jurisdiction to compel criminal defendants to execute Internal Revenue Form 8821 directing the Internal Revenue Service to release their tax returns to an assistant attorney general of the Commonwealth, where there existed no explicit language in 26 U.S.C. § 6103 preempting a State's ability to enter such orders and where the entering of such orders did not undermine or compromise the objectives of that statute. [221-222, 228-229]

Discussion of the case of *Tierney* v. *Schweiker,* 718 F.2d 449 (D.C. Cir. 1983). [222-228]

INDICTMENTS found and returned in the Superior Court Depart-

ment on February 1, 1995, April 21, 1995, August 24, 1995, November 30, 1995, and December 21, 1995, respectively.

Motions to compel the defendants to execute consent forms were heard by *E. Susan Garsh*, J., and questions of law were reported by her to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Frank Mondano* for Russell Burgess.

*Jocelyn J. Campbell* for Donald Riccio.

*Brian P. Burke*, Assistant Attorney General, for the Commonwealth.

FRIED, J. The defendants in these cases were suspected of using falsified Federal income tax returns to misrepresent lost earnings and as part of schemes to defraud insurance companies. A provision of the Internal Revenue Code precludes the Commonwealth from obtaining the defendants' tax returns directly from the Internal Revenue Service (IRS). Therefore, the Commonwealth moved the Superior Court to order each defendant to execute an IRS form authorizing the release of his tax returns for the relevant tax periods. The defendants opposed the Commonwealth's motions by invoking the privilege against self-incrimination under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. They also argued that the same Internal Revenue Code provision that precludes the Commonwealth direct access to their tax returns preempts the State court's ability to enter the requested orders. The Superior Court granted the Commonwealth's motions, but also granted the defendants' motion for a report to the Appeals Court of questions regarding the constitutionality of the orders. We transferred the case to this court on our own motion.

I

From the late 1980s to the early 1990s, Russell Burgess filed over sixty insurance claims involving automobile accidents. Burgess presented various forms of documentation to his insurance companies to support his claims for lost earnings. On more than one occasion, he submitted copies of income tax returns that he claimed to have filed with the IRS for the years between 1987 and 1990.

Burgess was indicted on multiple counts of insurance fraud, motor vehicle insurance fraud, and larceny by false pretenses.

Evidence presented before the grand jury suggested that Burgess had staged automobile accidents, that he had filed no tax return with the IRS for the years between 1987 and 1990, and that for the same period the proceeds of insurance claims constituted almost all of Burgess's income.

The case against Donald Riccio is similar. From the late 1980s to the early 1990s, Riccio filed over sixty insurance claims involving automobile accidents. Riccio presented various forms of documentation to his insurance companies to support his claims for lost earnings. On at least one occasion, he submitted a copy of the 1989 income tax return that he claimed to have filed with the IRS.

Riccio was indicted on multiple counts of insurance fraud, motor vehicle insurance fraud, larceny by false pretenses, and perjury. Evidence presented before the grand jury suggested that Riccio had staged automobile accidents, that he had not filed a tax return with the IRS for 1989, and that the proceeds of insurance claims constituted almost all of Riccio's income for 1989. There is some evidence suggesting that Riccio and Burgess collaborated on some of Riccio's claims.

The Commonwealth requested that the IRS release Burgess's tax returns for the years 1988 and 1990, and Riccio's 1989 tax return. The IRS refused, citing 26 U.S.C. § 6103, an Internal Revenue Code provision governing dissemination of Federal tax returns and return information. Section 6103 generally limits release of a taxpayer's tax returns and return information to the taxpayer himself, congressional committees, the President, certain State officials, Federal law enforcement officials, and other Federal agencies. By § 6103(c), a "designee" of the taxpayer may receive the taxpayer's returns or return information if the taxpayer submits a written request for or consent to such disclosure.

Having failed to obtain the defendants' tax returns from the IRS directly, the Commonwealth moved the Superior Court to compel Burgess's and Riccio's execution of IRS Form 8821. Under § 6103(c), Burgess's and Riccio's submission of signed Form 8821 to the IRS would have authorized the IRS to release their tax returns to an assistant attorney general of the Commonwealth who was designated on the form as the intended recipient of the returns.

Burgess, whose case preceded Riccio's, opposed the Commonwealth's motion. He argued that the proposed mechanism

would violate his privilege against self-incrimination under the Fifth Amendment and art. 12. He further argued that § 6103 preempts any State action relating to disclosure of Federal tax returns and return information, and that the Superior Court therefore lacks the jurisdiction to grant the Commonwealth's motion.

After a hearing, the Superior Court judge granted the Commonwealth's motion to compel Burgess to execute Form 8821. In her memorandum of decision and order, the judge ordered a number of alterations to Form 8821 in response to concerns raised by Burgess. Under the Fifth Amendment only compelled communication that is *testimonial* and potentially incriminating is precluded by the privilege against self-incrimination, see *Schmerber* v. *California,* 384 U.S. 757, 761 (1966), and under art. 12 compelled communication that furnishes evidence is precluded. See *Opinion of the Justices,* 412 Mass. 1201, 1208 (1992). Burgess argued that his execution of Form 8821 would be sufficiently testimonial to violate his privilege against self-incrimination. The judge ordered the Commonwealth to add language to Form 8821 to make sure that inserting Burgess's name under the heading "taxpayer" in Form 8821 merely designates him as the person making the request, and does not implicitly concede any obligation on his part to have filed income tax returns. The judge also ordered the Commonwealth to add the phrase "if any" to the preprinted language in Form 8821 so that Burgess's act of signing does not implicitly assert that he had filed any tax returns with the IRS.

Burgess filed a motion offering a fresh argument against the Commonwealth's motion and requesting a report of questions to the Appeals Court. Mass. R. Crim. P. 34, 378 Mass. 905-906 (1979). Riccio joined Burgess's motion. The Superior Court judge, in response to Burgess's motion, filed a second memorandum of decision and order. Despite the fact that Form 8821, as the Commonwealth prepared it, already contained language to the effect that Burgess would be signing the form pursuant to a court order, Burgess argued that his act of signing would implicitly assert that he consents to the release of his tax returns. At Burgess's request, the judge ordered the Commonwealth to remove the Privacy Act and Paperwork Reduction Act Notice at the bottom end of

Form 8821 which states that the use of the form is "voluntary."[1] The judge also allowed Burgess's motion to report to the Appeals Court questions regarding the validity of her ruling.

The Superior Court judge filed a separate memorandum of decision and order ordering Riccio to execute a Form 8821 with the same set of alterations as granted Burgess. The judge also allowed Riccio's oral motion to report to the Appeals Court questions regarding the validity of her ruling.

## II

### A

The defendants assert that the Superior Court's orders compelling them to execute Form 8821 violate their privilege against self-incrimination as protected by the Fifth Amendment. We agree with the Commonwealth that the Supreme Court's decision in *Doe* v. *United States*, 487 U.S. 201 (1988) (*Doe II*), disposes of this claim.

In *Doe II*, the defendant appeared before a grand jury, but invoked the Fifth Amendment privilege against self-incrimination when he was questioned about bank records in foreign banks. The foreign banks, citing their governments' banking secrecy laws, also refused to release the defendant's bank records directly to the government. The government then moved the Federal District Court to order the defendant to execute a consent directive authorizing the banks to disclose records of any and all accounts over which he had control. The defendant opposed the motion, again invoking the privilege against self-incrimination under the Fifth Amendment.

The Fifth Amendment states that no one "shall be compelled in any criminal case to be a witness against himself." The Supreme Court has been very explicit that this language "does not independently proscribe the compelled production of every

---

[1] Based on its correspondence with the local disclosure office of the IRS, the counsel for the Commonwealth informed us during oral argument that the alterations to Form 8821 ordered by the Superior Court do not diminish its effectiveness. Furthermore, the use of Form 8821 is optional. The portion of Form 8821 that Burgess objected to states: "Form 8821 is provided by the IRS for [the requester's] convenience and its use is voluntary." And the general instruction on the second page of the form states: "You may file a tax information authorization without using Form 8821, but it must reflect all information that is required on Form 8821."

sort of incriminating evidence but applies only when the accused is compelled to make a *testimonial* communication that is incriminating." *Fisher* v. *United States*, 425 U.S. 391, 408 (1976) (*Fisher*). See also *Schmerber* v. *California*, 384 U.S. 757, 761 (1966) ("We hold that the privilege [against self-incrimination] protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . ."). The Fifth Amendment protection is unavailable when the evidence sought from a witness is "real" or "physical" rather than "testimonial." *Id.* at 764. Therefore, a suspect may be compelled to submit to field sobriety tests, *Pennsylvania* v. *Muniz*, 496 U.S. 582 (1990); provide fingernail scrapings, *Cupp* v. *Murphy*, 412 U.S. 291 (1973); provide a voice exemplar, *United States* v. *Dionisio*, 410 U.S. 1 (1973); stand in a lineup, *United States* v. *Wade*, 388 U.S. 218 (1967); and furnish a blood sample, *Schmerber* v. *California, supra*. Generalizing from these and similar decisions, the Court in *Doe II* further clarified the nature of "testimonial" communication by stating that "in order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe II, supra* at 210, 211, quoting 8 J. Wigmore, Evidence § 2265, at 386 (McNaughton rev. ed. 1961). The Fifth Amendment privilege against self-incrimination applies not only to verbal communications, but, as the term "implicitly" suggests, also to nonverbal acts that imply assertions. In *Fisher, supra* at 409-410, and *United States* v. *Doe*, 465 U.S. 605, 612-613 & n.11 (1984) (*Doe I*), the Court stated that a witness's act of producing subpoenaed documents may constitute testimonial communication by asserting implicitly that the documents existed, were in the witness's control, and were authentic.

But not all such implicit assertions merit Fifth Amendment protection. What is beyond dispute is that, if the evidence in question is nontestimonial, then a witness can be compelled to yield that evidence under the Fifth Amendment. It is not the case, however, that, in all situations and under every circumstance, if the evidence in question has some testimonial aspect, then a witness cannot be compelled to yield that evidence under the Fifth Amendment. Although the Court in *Fisher* conceded that compelling the production of documents in that case results in implied assertions regarding the existence and location of those documents, it went on to observe that such assertions are

not "sufficiently testimonial for purposes of the privilege" against self-incrimination under the Fifth Amendment. *Fisher, supra* at 411. The Court explained:

> "*[T]he Government is in no way relying on the 'truthtelling' of the taxpayer to prove the existence of or his access to the documents* . . . . The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers. Under these circumstances by enforcement of the summons 'no constitutional rights are touched. *The question is not of testimony but of surrender*' " (emphases added).

*Id.,* quoting *In re Harris,* 221 U.S. 274, 279 (1911). Certain factual statements are insufficiently testimonial for Fifth Amendment purposes if they are merely incidental to or implicit in the physical acts that a witness is compelled to perform,[2] and if their truths will not be relied on by the prosecution to convict the witness. The *Fisher* Court noted that an accused compelled to submit a handwriting exemplar also implicitly makes assertions: that he is able to write, and that the resulting exemplar is his. *Id.* Witnesses compelled to yield physical evidence may often be taken to make analogous implicit assertions. But the Fifth Amendment cannot be construed to protect witnesses from making such assertions incidental to the compelled physical act where the assertions are not put to independent use against the witness. Certainly, the Court's past decisions involving physical evidence foreclose such an extension of the privilege against self-incrimination.

The *Doe II* Court held that the execution of the consent directive by the defendant in that case would not violate his privilege against self-incrimination because whatever evidence the form itself and the act of executing it furnished was either nontestimonial or insufficiently testimonial. *Doe II, supra* at 215-218. The consent directive did not acknowledge the existence of any bank accounts or other information relating to the defendant. Therefore, neither the form itself nor the act of executing it

---

[2] See W.R. LaFave & J.H. Israel, Criminal Procedure 439 (2d ed. 1992) ("[T]he *Fisher* Court was not dealing with a traditional form of testimony, but with what it viewed as a quite different concern — whether the incidental communicative aspects of a physical act (production) should be deemed 'testimonial' ").

made assertions as to the existence of bank accounts, control of them by the defendant, or their authenticity. Furthermore, the consent directive involved in *Doe II* clearly stated that the requester signed the form pursuant to a court order, and hence neither the form nor the act of executing it implied an assertion regarding the defendant's actual state of mind. *Id.* at 216. In these respects the defendant was compelled to submit only non-testimonial evidence.

The *Doe II* Court drew a distinction between compelling a witness to manifest his consent to the disclosure of the information sought, and compelling him to "direct" the disclosure of the same information, and observed that the defendant was compelled only to direct the disclosure. *Id.* at 216-218. The Court conceded that the defendant made an assertion by being compelled to direct the disclosure. *Id.* at 217-218 ("We read the directive as equivalent to a *statement by Doe* that, although he expresses no opinion about the existence of, or his control over, any such account, he is authorizing the bank to disclose information relating to accounts over which . . . Doe can exercise the right of withdrawal" [emphasis added] [citation omitted]). But the Court held that this assertion is insufficiently testimonial for Fifth Amendment purposes. *Id.* at 217 n.15. The Court did not offer further reasoning for its conclusion, but noted, citing the *Fisher* Court, that witnesses compelled to submit physical evidence are compelled to make analogous assertions. *Id.* at 217 n.15, citing *Fisher*, *supra* at 411. This indicates that the *Doe II* Court relied on the reasoning of *Fisher*. The assertion the defendant is compelled to make is merely incidental to the physical act that the defendant is compelled to perform. In the words of the *Doe II* Court, the assertion made is only a "simple acknowledgment — that the [defendant] in fact performed the compelled act." *Id.* at 217 n.15. Furthermore, the government would not rely on the truth of the fact that the defendant directed the banks to release the information sought; rather, its reliance would be on any information disclosed as a result of the defendant's direction.

In the cases before us, neither IRS Form 8821 itself, as modified, nor the act of executing it would, explicitly or implicitly, be sufficiently testimonial for Fifth Amendment purposes. The Superior Court's meticulous and skillfully drafted order prevents any such unintended communication. The defendants object to the use of the word "taxpayer" in Form 8821. They argue that

inserting their names next to this word makes the form and the act of executing it implicitly assert that each defendant is a taxpayer as defined by the Internal Revenue Code and that he had an obligation to file Federal tax returns for the years in question. The Superior Court negated any such possible assertion by adding the following language to § 1 of Form 8821:

> " 'Taxpayer' is used solely as the designation of the person making this request and is not intended to, and does not, imply any obligation on the part of the requester to have filed any tax returns."

The Superior Court also ordered the Commonwealth to add the words "if any" at the end of § 2 of Form 8821, which states that the designated recipient of the returns "is authorized to inspect and/or receive confidential tax information in any office of the Internal Revenue Service for the following tax matters." Hence, neither the form nor the act of signing can be taken to assert that the defendants' tax returns for the periods in question exist at the IRS. Nor would any assertion be made as to the control or authenticity of any existing tax returns. The Commonwealth also added the words "Signed pursuant to Court Order" next to the spaces left in Form 8821 for the requester's signature and printed name. Furthermore, at the defendants' request, the Superior Court judge ordered the removal of the Privacy Act and Paperwork Reduction Act Notice at the bottom end of the Form 8821 which states that the use of the form is "voluntary." Thus the Superior Court divested the form and the · act of executing it of any implication that the defendants consented to the release of their tax returns.

By compelling the defendants to "direct" the IRS to release whatever tax returns are available, the defendants in these cases, like the defendant in *Doe II,* are compelled to assert this much: that they direct the IRS to release their tax returns. But this assertion is merely incidental to and implicit in the act the defendants are compelled to perform; it is only a "simple acknowledgment." And it is difficult to see how the Commonwealth can rely on the truth of this assertion to the defendant's detriment; rather, the Commonwealth will rely on whatever information is disclosed as a result of the defendants' act of authorization.

Under the reasoning of *Fisher* and *Doe II,* the factual asser-

tions resulting from compelling the defendants to execute Form 8821, as altered, are either nontestimonial or insufficiently testimonial for Fifth Amendment purposes. Therefore, the Superior Court's orders did not violate the defendants' Fifth Amendment privilege against self-incrimination.

## B

The defendants argue that their cases are distinguishable from *Doe II*. As the defendants emphasized in their oral arguments, the *Doe II* Court explicitly stated that whether a compelled communication is testimonial for purposes of applying the Fifth Amendment depends on "the facts and circumstances of the particular case." *Doe II, supra* at 214-215, citing *Fisher, supra* at 410. Taking their cue from this statement, the defendants argue that the facts and circumstances of their cases are more similar to those of *In re Grand Jury Proceedings*, 814 F.2d 791 (1st Cir. 1987) (*Ranauro*), than to those of *Doe II*. In *Ranauro*, the target of a grand jury investigation was ordered by the Federal District Court to execute a consent directive that would have authorized a foreign bank to release his bank account and transaction information. A divided panel held that such an order violates the Fifth Amendment. *Id.*

It is important to note that the Supreme Court's decision in *Doe II* was explicitly intended to resolve a conflict among the Federal Courts of Appeals as to whether the compelled execution of a consent form authorizing the disclosure of foreign bank records is inconsistent with the Fifth Amendment privilege against self-incrimination. *Doe II, supra* at 206. The Court, in fact, referred to the First Circuit's decision in *Ranauro* as presenting one side of the split, *Doe II, supra* at 206 n.4, and Justice Stevens referred to and quoted approvingly from *Ranauro* in his dissenting opinion. *Id.* at 221-222 n.2 (Stevens, J., dissenting). Given that the *Doe II* Court saw its holding as in part addressing the *Ranauro* decision, the defendants' reliance on *Ranauro* is misplaced.[3]

In another attempt to distinguish his case from *Doe II*, Riccio

---

[3]In at least one important respect, the facts and circumstances of the defendants' cases are closer to those of *Doe* v. *United States*, 487 U.S. 201 (1988) (*Doe II*), than to those of *In re Grand Jury Proceedings*, 814 F.2d 791 (1st Cir. 1987) (*Ranauro*). The consent directive involved in *Ranauro* did not indicate that it was executed under court order. And the First Circuit stated that its holding was partly based on this defect of the consent directive. *Ran-*

draws our attention to what he considers to be essential differences between the "facts and circumstances" of *Doe II* and those of his case. First, Riccio points out that whereas *Doe II* involved the target of a grand jury investigation, he has already been indicted. But the Fifth Amendment privilege against self-incrimination is available to a witness at various stages in the sequence of the criminal justice process. The distinction between an indicted person and one who is a target of a grand jury investigation is immaterial for purposes of the Fifth Amendment privilege against self-incrimination. *Counselman* v. *Hitchcock*, 142 U.S. 547, 562-563 (1892).

Second, Riccio points out that, while the foreign banks in *Doe II* were artificial entities, and therefore could not invoke the privilege against self-incrimination under the Fifth Amendment, he as a natural person can. But this is a faulty comparison. Riccio is referring to the so-called entity exception doctrine, according to which the privilege against self-incrimination is unavailable to corporations. *Braswell* v. *United States*, 487 U.S. 99, 108-110 (1988). *Hale* v. *Henkel*, 201 U.S. 43 (1906). But it was the individual defendant, rather than the foreign banks, who was the person compelled to execute a consent directive in *Doe II*. The party equivalent to the foreign banks in the cases before us is the IRS rather than Burgess and Riccio. There is no material difference between the persons compelled to execute authorization forms in *Doe II* and the present cases.

Finally, Riccio claims that, whereas the foreign bank records involved in *Doe II* are not privileged information, his personal tax returns are privileged. In the portion of the *Doe II* opinion that Riccio cites in support of this third distinction, the Supreme Court stated: "It is undisputed that the *contents* of the foreign bank records sought by the Government are not *privileged under the Fifth Amendment*" (emphases added). *Doe II, supra* at 206, citing *Braswell* v. *United States, supra* at 108-110; *Doe I, supra*; *Fisher, supra*. This statement does not support Riccio's distinction. The Fifth Amendment protects a witness from being *compelled* to produce incriminating testimonial evidence. The Court, in *Fisher* and *Doe I*, held that the *contents* of the subpoenaed documents involved in those cases, as opposed to the *act* of producing them, were not privileged because the

*auro, supra* at 795. On the other hand, the consent directive in *Doe II* and IRS Form 8821, as amended by the Superior Court in the cases before us, stated unambiguously that the requester executed the form pursuant to a court order.

preparation of the documents was voluntary and not *compelled. Doe I, supra* at 610; *Fisher* v. *United States, supra* at 396-397.[4] In the above-quoted statement, the *Doe II* Court came to the same conclusion regarding the contents of the information sought in that case. In the cases before us, contrary to what Riccio claims, the contents of the defendants' tax returns, should any exist, also are not privileged under the Fifth Amendment.

## C

The defendants also argue that the Superior Court's orders compelling them to execute Form 8821 violate their privilege against self-incrimination protected by art. 12 of the Massachusetts Declaration of Rights. The relevant portion of art. 12 reads: "No subject shall . . . be compelled to accuse, or furnish evidence against himself." The interpretation of this language is not controlled by the Supreme Court's Fifth Amendment jurisprudence. We have consistently held that these words provide a broader protection against self-incrimination than does the Fifth Amendment. See *Commonwealth* v. *Doe*, 405

---

[4]The *Doe II* Court cited *Braswell* v. *United States*, 487 U.S. 99 (1988), in addition to *Fisher* v. *United States*, 425 U.S. 391 (1976) (*Fisher*), and *United States* v. *Doe*, 465 U.S. 605 (1984) (*Doe I*), in making the statement to which Riccio refers. In *Braswell*, a president of two corporations who had been subpoenaed to produce corporate records invoked the Fifth Amendment privilege against self-incrimination. He argued that the entity exception doctrine is based on the privacy-based view of the Fifth Amendment of *Boyd* v. *United States*, 116 U.S. 616 (1886). Because the privacy-based view has been displaced by the compelled-testimony view of *Fisher* and *Doe I*, he argued, the entity exception doctrine is no longer sound. The *Braswell* Court agreed that *Fisher* and *Doe I* marked a fundamental shift in the Court's interpretation of the Fifth Amendment, but held that the entity exception doctrine is still valid. *Braswell* v. *United States, supra* at 108-110.

The *Doe II* Court seems to have cited *Braswell* for the same reason that it cited *Fisher* and *Doe I*. As the Court stated in *Hale* v. *Henkel*, 201 U.S. 43, 74-75 (1906), the first case to establish the entity exception doctrine, the corporation is a "creature of the State," and exercises its franchise subject to the "reserved right" of the State to investigate with the corporation's assistance whether the corporation has complied with the laws of the State. A custodian of corporate records therefore has no privilege against the State's exercise of its "visitorial power." *Wilson* v. *United States*, 221 U.S. 361, 382 (1911). It follows that the requisite element of compulsion is always missing in cases, like *Braswell*, involving disclosure of corporate documents. In such cases, the act of producing the subpoenaed documents, as well as the contents of those documents, are necessarily not privileged since the custodian, in voluntarily assuming his position, consented to cooperate with the State's investigations.

Mass. 676, 678 (1989); *Attorney Gen.* v. *Colleton,* 387 Mass. 790, 796 (1982); *Commonwealth* v. *Hughes,* 380 Mass. 583, 595, cert. denied, 449 U.S. 900 (1980). We nonetheless conclude that the Superior Court orders in these cases do not violate art. 12.

Our greater protection against self-incrimination is based on the different text and doctrinal structure of art. 12. We do not just protect the Federal privilege and then go a certain further distance, as if for good measure. Although art. 12 demands a more expansive protection, "it does not change the classification of evidence to which the privilege applies. Only that genre of evidence having a testimonial or communicative nature is protected under the privilege against self-incrimination." *Attorney Gen.* v. *Colleton, supra* at 796 n.6, citing *Commonwealth* v. *Brennan,* 386 Mass. 772, 780 (1982). Accordingly, the art. 12 protection is unavailable where a witness is the source of physical or real evidence. A suspect may be compelled to provide a handwriting exemplar, *Commonwealth* v. *Buckley,* 410 Mass. 209, 214-216 (1991), undergo a CAT scan and other "nontestimonial" psychological tests, *Commonwealth* v. *Trapp,* 396 Mass. 202, 212 (1985), submit to breathalyzer and field sobriety tests, *Commonwealth* v. *Brennan, supra,* and go to the courtroom floor and strike a pose for identification purposes, *Commonwealth* v. *Burke,* 339 Mass. 521, 534-535 (1959).

The sets of circumstances in which art. 12 allows a witness to invoke the privilege whereas the Fifth Amendment does not are discrete and well defined. Thus, we have held that art. 12 does not allow the fact that a defendant refused to submit to a breath analysis to be admitted in evidence. *Opinion of the Justices,* 412 Mass. 1201 (1992). Compare *South Dakota* v. *Neville,* 459 U.S. 553 (1983). We have held that a custodian of corporate records may invoke his art. 12 right against self-incrimination in response to a subpoena for those corporate records where the act of production itself would be personally incriminating. *Commonwealth* v. *Doe, supra* at 678. Compare *Braswell* v. *United States,* 487 U.S. 99 (1988). We have also held that the type of immunity that provides the requisite degree of protection for art. 12 purposes is the so-called transactional immunity, which provides a greater protection than the "use and derivative use immunity" required by the Fifth Amendment. *Attorney Gen.* v. *Colleton, supra.* Compare *Kastigar* v. *United States,* 406 U.S. 441 (1972). None of these differences

from the Federal standards indicated a departure from the crucial distinction between testimonial and physical evidence. See *Opinion of the Justices, supra* at 1207-1209; *Commonwealth* v. *Doe, supra* at 679; *Attorney Gen.* v. *Colleton, supra* at 796-797 n.6. Indeed, the defendants do not argue that art. 12 protects them from yielding any nontestimonial evidence.

It does not automatically follow, however, that, as regards the issue here, our art. 12 analysis must merely duplicate our earlier Fifth Amendment analysis. According to the Supreme Court's holdings in *Fisher* and *Doe II*, the Fifth Amendment privilege against self-incrimination does not protect witnesses from being compelled to furnish all testimonial evidence. Certain factual statements are *insufficiently* testimonial for Fifth Amendment purposes. *Fisher* and *Doe II*, however, do not tie this court's hands in determining what kinds of evidence are sufficiently testimonial for art. 12 purposes. We are free to consider certain evidence, considered by the Supreme Court to be insufficiently testimonial for Fifth Amendment purposes, to be sufficiently testimonial for art. 12 purposes.

In his dissenting opinion in *Doe II*, Justice Stevens disagreed with the majority in classifying an assertion the defendant implicitly makes in executing a consent directive, and offers an analysis of compelled self-incrimination that we should consider for art. 12 purposes. Justice Stevens judged that the consent directive involved in *Doe II*, if signed by the defendant, "does reveal . . . that [the defendant] 'directs' . . . the release of any documents that conform to the description contained in the [directive]" (citation omitted). *Doe II, supra* at 221 n.2 (Stevens, J., dissenting). This much the *Doe II* majority conceded. *Id.* at 217-18. But the *Doe II* majority also observed, following the *Fisher* Court, that witnesses compelled to submit physical evidence are compelled to make analogous assertions. *Id.* at 217 n.15, citing *Fisher, supra* at 411. Justice Stevens went on to conclude that in *Doe II* the defendant is compelled to reveal a "reasoned decision" by being compelled to execute the directive. *Id.* at 219 (Stevens, J., dissenting). The court order therefore "intru[des] upon the contents of the mind of the [defendant,]" *id.* at 219 n.1, and compels the defendant to "use his mind" to aid the prosecution. *Id.* at 219. The implication is that other assertions incidental to physical acts that defendants are required to perform do not evidence "reasoned decisions" on the part of the defendants. *Id.* ("The forced execution of this

document differs from the forced production of physical evidence just as human beings differ from other animals").

This line of reasoning fails to convince us that, for art. 12 purposes, we should not treat this case as we do cases of compelled production of physical or real evidence. A defendant uses his mind in providing a handwriting exemplar or in striking a pose on a courtroom floor for identification purposes just as much or little as in signing an authorization form of the kind involved in *Doe II* and the cases before us. Mental operations are involved in providing all such evidence, and in compelling a defendant to assert statements evidencing such mental acts a court intrudes upon the contents of the defendant's mind.[5]

As pointed out earlier, we, like the Supreme Court, have held on numerous occasions that a witness can be compelled to submit various forms of physical evidence. We recognize, as the Supreme Court did in *Fisher* and *Doe II*, that a witness, in being thus compelled to provide physical evidence, is also compelled to assert certain statements incidental to the performance of the act of producing physical evidence. We follow the Supreme Court in holding today that, if such assertions are merely incidental to and implicit in the compelled act of production, *and* will not be relied on by the Commonwealth in convicting the defendant in this or any other prosecution, then those assertions are insufficiently testimonial for art. 12 purposes.[6]

It may be objected here that it cannot be guaranteed that the

___

[5]Justice Stevens draws a distinction between compelling a witness to surrender a key to a safe and compelling him to reveal a combination to a safe. *Doe II, supra* at 219 (Stevens, J., dissenting). He suggests that compelling a witness to surrender any physical evidence is like the former whereas compelling him to sign a consent directive is like the latter. It is our opinion, however, that compelling a witness to surrender most types of physical evidence is much more like compelling him to reveal a safe combination. Compelling a witness to provide a blood sample, *Schmerber* v. *California*, 384 U.S. 757 (1966), or fingernail scrapings, *Cupp* v. *Murphy*, 412 U.S. 291 (1973), is exceptional in that such court orders do not compel the witness to "use his mind" at all. Only such cases seem equivalent to Justice Stevens's example of compelling a witness to surrender a key.

[6]The same line of reasoning is dispositive of an alternative claim that the defendants could have made in the cases before us. The alterations to Form 8821 that the Superior Court judge ordered made to negate any assertions about the defendants' consents give rise to the worry that the acts of execution would implicitly assert that the defendants *refuse* to sign the forms — that the defendants sign the forms only because they were compelled to do so. Article

Commonwealth will not rely on the incidental assertions in question. If indeed the prosecution seeks to refer to the circumstances surrounding the obtaining of tax return information at trial, the defendants can raise the art. 12 issue in motions in limine, and the judge should then exclude such evidence. Cf. *Commonwealth* v. *Hinckley*, 422 Mass. 261, 265 (1996); *Commonwealth* v. *McGrail*, 419 Mass. 774, 775 (1995).[7]

## III

Finally, the defendants argue that the Superior Court lacks the jurisdiction to enter orders compelling them to execute Form 8821 because 26 U.S.C. § 6103 preempts a State court's ability to enter such orders. We find no clear congressional intent to effect such preemption.

Under the supremacy clause of art. 6 of the United States Constitution,[8] Congress can supersede State laws when acting within its delegated powers. *Gade* v. *National Solid Wastes Mgt. Ass'n*, 505 U.S. 88, 108 (1992). Whether a Federal law preempts

12, unlike the Fifth Amendment, does not allow such refusal evidence to be admitted. *Opinion of the Justices*, 412 Mass. 1201 (1992). This is an area in which art. 12 does provide a greater protection than the Fifth Amendment. As the refusal to submit oneself to a chemical test or breath analysis implicitly testifies, "I have had so much to drink that I know or at least suspect that I am unable to pass the test," *id.* at 1209, the refusal voluntarily to sign Form 8821 implicitly testifies one's belief in the incriminating nature of the information that the IRS will release on its receipt of the signed form. Under art. 12, the defendants cannot be compelled to make the former statement. It seems that art. 12 also forbids compulsion of the defendants to make the latter testimonial communication.

But an assertion of any such refusal statement is merely incidental to the act of executing Form 8821. Furthermore, the Commonwealth may not rely on any refusal evidence to convict the defendants. The Commonwealth seeks to rely on the information that the IRS will disclose as the result of the defendants' act of authorization, not the evidence regarding the circumstances surrounding the obtaining of that information. It follows that any assertions of refusal are insufficiently testimonial for art. 12 purposes.

[7]The same mechanism is available if the Commonwealth seeks to introduce the refusal evidence at trial.

[8]The supremacy clause provides:

"This constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the Land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding."

a State law is a question of congressional intent. *English* v. *General Elec. Co.*, 496 U.S. 72, 78-79 (1990).

There exists no explicit language in the text of § 6103 depriving the Superior Court of jurisdiction to enter the orders at issue. Section 6103 governs the actions of the IRS officials and certain other individuals who come to possess tax returns and return information from the IRS in accordance with § 6103. 26 U.S.C. § 6103(a). In particular, § 6103(c), through which the Commonwealth proposes to obtain the defendants' tax returns, speaks of what the Secretary of the Treasury may or may not do.[9] No part of § 6103 explicitly prohibits State courts from taking action in relation to disclosure of tax returns and return information.

The remaining question is whether the Superior Court judge's entering of the orders at issue would undermine or compromise the objectives of § 6103. Despite the absence of an express preemption clause, the Superior Court's jurisdiction to enter the orders at issue is supplanted if such jurisdiction stands as an obstacle to the full implementation of the objectives of a Federal law. *Gade* v. *National Solid Wastes Mgt. Ass'n, supra* at 102-103. If the IRS's honoring of requests executed pursuant to a court order undermines or compromises the objectives of § 6103, then we must conclude that § 6103 preempts the Superior Court's jurisdiction to compel the defendants to execute Form 8821.

In *Tierney* v. *Schweiker*, 718 F.2d 449, 455 (D.C. Cir. 1983), the court held that only a "knowing and voluntary consent" meets the requirements of § 6103(c). According to the decision

---

[9]Section 6103(c) states:

"The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a request for or consent to such disclosure, or to any other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person. However, return information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration."

in *Tierney*, the IRS cannot honor involuntarily executed requests without compromising the objectives of § 6103(c). The *Tierney* case stemmed from an attempt by the Social Security Administration (SSA) to verify the income and assets of its benefit recipients. The SSA, with the cooperation of the IRS and the General Accounting Office, devised a request form intended to meet the requirements of § 6103(c). The SSA's "notice-and-consent" form, as mailed to the benefit recipients, stated that a benefit recipient's execution of the form would enable the SSA to obtain his tax information from the IRS, and that the failure to sign the form may "affect[]" the recipient's Social Security income checks. *Id.* at 452. In two separate lawsuits filed against the SSA and the IRS, a group of benefit recipients argued that the SSA's attempt to obtain tax information was illegitimate on various statutory and constitutional grounds, and that the IRS would be violating § 6103 if it released tax information to the SSA. Both suits were dismissed by Federal District Courts on jurisdictional and remedial grounds. On appeal, the United States Court of Appeals for the District of Columbia Circuit consolidated the two cases, and on reaching the merits of the claims against the IRS, found it unnecessary to evaluate the claims against the SSA. The court held that the IRS cannot rely on the notice-and-consent form involved. *Id.* at 455.[10] First, the court pointed out that the form did not specify the tax years for which the disclosure was requested. Such specification was required by the IRS's own regulations. 26 C.F.R. § 301.6103(c)-1(a) (1997).[11] Second, the court held that the notice-and-consent form cannot elicit "the type of *knowing and voluntary consent*

---

[10]A concurring opinion in *Tierney* v. *Schweiker*, 718 F.2d 449 (D.C. Cir. 1983), recommended that Congress amend § 6103 to allow the IRS to disclose tax returns and return information to the SSA. *Id.* at 458-459 (Van Pelt, J., concurring). Congress so amended the statute in 1984. See 26 U.S.C. § 6103(l)(7), amended by Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 1150-51.

[11]The relevant portion of this regulation states:

"A request for or consent to disclosure must be in the form of a written document pertaining solely to the authorized disclosure. The written document must be signed and dated by the taxpayer who filed the return or to whom the return information relates. The taxpayer must also indicate in the written document —

(1) The taxpayer's taxpayer identity information described in section 6103(b)(6);

that the statute contemplates before the IRS can release confidential tax information under subsection 6103(c)'' (emphasis added). *Tierney* v. *Schweiker, supra* at 455.[12]

We do not agree with the *Tierney* court that only a knowing and voluntary consent meets the requirements of § 6103(c). Section 6103(c) speaks of a *"request for or consent to* [a] disclosure." One of the cardinal principles of statutory construction is to give effect, if possible, to every clause and word of a

---

(2) The identity of the person to whom disclosure is to be made;

(3) The type of return (or specified portion of the return) or return information (and the particular data) that is to be disclosed; and

(4) The taxable year covered by the return or return information."

[12]Two Federal District Courts have implicitly assumed the validity of the *Tierney* court's interpretation of § 6103(c) in reaching the merits on different issues. *Olsen* v. *Egger*, 594 F. Supp. 644 (S.D.N.Y. 1984), stemmed from a separation agreement entered into by a couple in which the husband promised to send to the wife copies of his tax returns for the prior calendar year. When the husband did not comply with the agreement, the wife sued the husband. A Supreme Court of New York entered an order compelling the husband to turn over his tax returns. When the husband refused, the New York court held him in contempt. The wife next brought a Federal lawsuit against the Commissioner of the IRS and the United States demanding the release of the husband's tax returns. She argued that the separation agreement constituted a request required by § 6103(c). The *Olsen* court held that the IRS was not obligated to release the husband's tax returns. It reasoned that, while the separation agreement meets the requirements of *Tierney* in being knowing and voluntary, it failed to meet other requirements of § 6103(c) specified in 26 C.F.R. § 301.6103(c)-1(a) (1997). *Olsen* v. *Egger, supra* at 646-647.

*Baskin* v. *United States*, 78 A.F.T.R.2d (RIA) 96-5460 (S.D. Tex. 1996), involved a concerted criminal investigation of a Houston police department (HPD) officer by the IRS, the FBI, and the HPD. When an HPD internal affairs investigator informed the officer that he is not obliged to but has the choice of signing Form 8821 to allow the IRS to release his tax returns to the investigator, the officer signed the form. In his lawsuit against the United States, the officer argued that he signed Form 8821 under a threat of job forfeiture, and hence that the IRS's disclosure of his tax returns was illegal. The *Baskin* court rejected the officer's claim, and concluded that the officer cannot recover damages even if his signature was compelled. The court distinguished its case from *Tierney* by pointing out that whereas the face of the notice-and-consent form in *Tierney* showed that the requester signed the form involuntarily, the face of Form 8821 did not contain such information. *Id.* at 96-5470 — 96-5471 & n.40. The court reasoned that the IRS has no duty to make an affirmative attempt to determine whether a taxpayer's consent is voluntary. *Id.*

statute. *United States* v. *Menasche*, 348 U.S. 528, 538-539
(1955), quoting *Montclair* v. *Ramsdell*, 107 U.S. 147, 152
(1882). Contrary to this principle, by requiring a "knowing and
voluntary consent," the *Tierney* court read the word "request"
out of § 6103(c). We acknowledge that a compelled "consent"
sounds oxymoronic. See *In re Grand Jury Subpoena*, 826 F.2d
1166, 1171 n.1 (2d Cir. 1987) (Newman, J., concurring). But we
are unable to perceive the same requirement of voluntariness in
the term "request." A request is a request whether voluntary or
compelled. Because the notice-and-consent form sent by the
SSA contained "poorly-veiled threats" of benefit termination,
the *Tierney* court concluded that the form made "a mockery of
the consent requirement." *Tierney* v. *Schweiker, supra* at 456.
So it might have. But neither did the form in *Tierney* nor does
Form 8821 involved in the present cases, as amended by the
Superior Court, make a mockery of the *request* requirement of
§ 6103(c).

Nor do we find that the legislative intent as revealed by the
statutory history of § 6103 demands the *Tierney* court's reading
of § 6103(c). The IRS would need to discriminate among the
motives from which taxpayers make § 6103(c) requests if
disclosing tax returns and return information in response to
requests made from certain types of motives would undermine
or compromise the objectives of § 6103. Section 6103 was
revised as part of the Tax Reform Act of 1976 in order to curtail
loose disclosure of tax returns and return information by the
IRS. See *Church of Scientology of Cal.* v. *IRS*, 484 U.S. 9, 16
(1987); *Stokwitz* v. *United States*, 831 F.2d 893, 894 (9th Cir.
1987), cert. denied, 485 U.S. 1033 (1988); *United States* v.
*Bacheler*, 611 F.2d 443, 445-446 (3d Cir. 1979). Before the pas-
sage of the Tax Return Act of 1976, tax returns were treated as
"public records," although inspection was authorized only under
the President's executive orders and under regulations based on
such orders. S. Rep. No. 94-938, at 315 (1976). This regime
was perceived to give rise to many uses and abuses of the
information that taxpayers submitted in tax returns. A Senate
Report stated:

> "Questions have been raised and substantial controversy
> created as to whether the present extent of actual and
> potential disclosure of return and return information to
> other Federal and State agencies for nontax purposes
> breaches a reasonable expectation of privacy on the part of

the American citizen with respect to such information. This, in turn, has raised the question of whether the public's reaction to this possible abuse of privacy would seriously impair the effectiveness of our country's very successful voluntary assessment system which is the mainstay of the Federal tax system."

*Id.* at 317. The revision of § 6103 therefore was motivated by two closely related overriding goals. First, Congress intended to protect taxpayers' reasonable expectations of privacy. Second, Congress sought thereby to ensure maximal compliance with Federal tax laws. *Jones* v. *United States*, 97 F.3d 1121, 1124-1125 (8th Cir. 1996); *Mallas* v. *United States*, 993 F.2d 1111, 1121 (4th Cir. 1993); *Flippo* v. *United States*, 670 F. Supp. 638, 642 (W.D.N.C. 1987), aff'd, 849 F.2d 604 (4th Cir. 1988).

To carry out these purposes, Congress established a comprehensive scheme in which tax returns and return information in the IRS's possession are treated as confidential and not subject to disclosure except in the limited situations delineated in § 6103. 26 U.S.C. § 6103(a). Subsections (c) to (o) of § 6103 provide that in some circumstances, under certain safeguards, tax returns and return information may be disclosed to the taxpayer himself, his designee, congressional committees, the President, certain State officials, Federal law enforcement officials, and other Federal agencies.

No part of this statutory history demands that we read § 6103(c) as requiring "knowing and voluntary consents." The decisive consideration is that the IRS would not be compromising the objectives of § 6103 by honoring requests executed pursuant to a court order. The IRS would not be contradicting taxpayers' reasonable expectations of privacy by honoring such requests — except in the question-begging sense that § 6103 is itself taken to create a greater expectation of privacy on which the defendants rely. It follows that a rule allowing such orders also does not diminish taxpayers' motivations to comply with the Federal tax laws.

A contradiction of a taxpayer's reasonable expectation of privacy does not occur every time a court orders what to the taxpayer is an undesirable disclosure of tax returns and return information. If a taxpayer brings a tort action — for instance, for an injury causing loss of earnings — and his income or tax information are relevant to the defendant's defense, the taxpayer

cannot have a reasonable expectation of privacy in his tax
returns and return information. In such cases, when the plaintiff
does not have copies of the relevant tax returns in his posses-
sion, both Federal and State courts have ordered the plaintiff to
sign Form 8821 or an equivalent IRS authorization form, and
courts have dismissed the case if the plaintiff failed to comply
with such orders. *Cross* v. *General Motors Corp.*, 721 F.2d
1152 (8th Cir. 1983), cert. denied, 466 U.S. 980 (1984); *Watkis*
v. *Payless Shoesource, Inc.*, 174 F.R.D. 113 (M.D. Fla. 1997);
*Derzack* v. *County of Allegheny*, 173 F.R.D. 400 (W.D. Pa.
1996), *aff'd*, 118 F.3d 1575 (3d Cir. 1997); Selby *vs.* Arms, U.S.
Dist. Ct. No. 93 Civ. 6481 (S.D.N.Y. 1995); *Grant* v. *Clairol,
Inc.*, 113 F.R.D. 574 (E.D. Pa. 1986); *Polk* v. *Cao*, 279 Ill. App.
3d 101 (1996); *Sanders* v. *Kansas City*, 18 Kan. App. 2d 688
(1993), cert. denied, 511 U.S. 1052 (1994); *Huntington Tobacco
Co.* v. *Fromer*, 193 A.D.2d 718 (N.Y. 1993); *Equitable Life As-
surance Soc'y* v. *Rocanova*, 189 A.D.2d 660 (N.Y. 1993):
*Scholte* v. *Agway, Inc.*, 152 A.D.2d 928 (N.Y. 1989).

There are other circumstances in which a court determines
that a litigant's tax returns are relevant to the case before it, and
orders the litigant to execute an IRS authorization form. Hines
*vs.* State Farm Fire & Cas. Co., U.S. Dist. Ct. No. CV486-39
(S.D. Ga. 1986), arose from a destruction of a couple's home
by fire, and the couple's subsequent suit against an insurer to
recover under their homeowners' insurance policy. The insurer
suspected the plaintiffs of arson and wanted to examine the
plaintiffs' tax returns to determine whether they had financial
motives to burn down their own home. When the plaintiffs
claimed that their own copies of tax returns had been destroyed
by fire, the insurer asked for an authorization to obtain the
returns from the IRS. The plaintiffs did not respond to this
request. The court, judging the tax returns to be material
information, granted the insurer's motion for summary judg-
ment.[13] In ACLI Gov't Servs., Inc. *vs.* Rhoades, U.S. Dist. Ct.
No. 83 Civ. 4778 (SAS) (S.D.N.Y. 1997), in connection with its
attempt to collect a money judgment, the plaintiff served the
defendants with a request to execute Form 8821 so that the
plaintiff could obtain the defendants' tax returns directly

[13]The United States Court of Appeals for the Eleventh Circuit later reversed
the District Court's decision because it concluded that there exist genuine is-
sues of fact as to whether the plaintiffs' tax returns are material information.
*Hines* v. *State Farm Fire & Cas. Co.*, 815 F.2d 648 (11th Cir. 1987). But the
court did not question the lower court's power to present the plaintiffs with
the choice between authorizing the IRS to disclose their tax returns to the
insurer and the dismissal of their case.

from the IRS. When the defendants repeatedly failed to comply with the court order demanding such execution, the court held them in civil contempt, subjecting the defendants to confinement and fines, and granted the plaintiff's motion to refer one of the defendants to the United States attorney for criminal prosecution.[14]

In these cases, taxpayers found it less than desirable to comply with court orders to sign forms requesting that the IRS release their tax information to third parties. Nor can it be assumed a priori that the type of choices taxpayers faced in the above cases — a choice between the dismissal of one's tort or contract action and signing an IRS authorization form; or a choice between confinement, fines, and a possibility of criminal prosecution on the one hand and signing an IRS authorization form on the other — is always easier on taxpayers than the choice between forgoing welfare benefits and signing an IRS authorization form, which the plaintiffs in *Tierney* faced. If the element of compulsion existed in the latter choice, so it existed in the other choices.

One feature of the cases before us makes the defendants' tax return information especially salient. Here, the defendants themselves had submitted to insurance companies copies of Federal income tax returns that they claimed to have filed with the IRS. No such independent injection of the tax returns into the scheme by the parties whose returns are sought was present in *Tierney* or the above-discussed cases in which courts ordered taxpayers to authorize the IRS to disclose their tax returns and return information.

It must also be observed that allowing the Superior Court to enter the orders at issue does not convert, as the *Tierney* court feared, the request exception of § 6103(c) into a " 'catch-all' provision to circumvent the general rule of confidentiality established by Congress." *Tierney* v. *Schweiker, supra* at 456. Here, a court of law made an individualized determination of the materiality of the defendants' tax information. *Tierney*, on the other hand, involved a mass mailing of the notice-and-consent forms to several million benefit recipients. *Id.* at 452.

---

[14]Cf. *Commodity Futures Trading Comm'n* v. *Collins*, 997 F.2d 1230, 1232 (7th Cir. 1993), citing 26 U.S.C. § 6103(c) and *Doe II, supra* (surmising that the Commodity Futures Trading Commission, which suspected the defendants of violating the Commodity Exchange Act, may be able to compel the defendants to obtain their tax returns from the IRS).

Furthermore, the Superior Court judge, in her first memorandum of decision and order, explicitly ordered the assistant attorney general to limit the disclosure of any tax information received from the IRS to the persons in the office of the Attorney General and those directly engaged in the prosecution of the present cases. The possibility of a wholesale circumvention of the § 6103(a) rule of confidentiality is far less real in the type of cases before us than in cases like *Tierney,* in which a Federal agency resorted to § 6103(c) to obtain tax information.

We conclude that the Superior Court judge's orders compelling the defendants to execute Form 8821, which execution in turn will enable the IRS to disclose the defendants' tax information to the Commonwealth, does not undermine or compromise the objectives of § 6103. It follows that § 6103 does not impliedly preempt the Superior Court's jurisdiction to enter such orders. We hold today that, under the circumstances of these cases, the disclosure requests submitted pursuant to court orders are not necessarily improper for § 6103(c) purposes.[15]

In any event, it is the IRS that must decide whether to honor the requests at issue. During oral argument, the counsel for the Commonwealth stated that the local disclosure office of the IRS had informed him that the IRS would honor Form 8821, as amended by the Superior Court and executed by the defendants. If the IRS finds Form 8821 effective for § 6103(c) purposes, that decision would not be such an unreasonable construction of § 6103 as to demand that this court reach a contrary conclusion necessary to contradict the agency's interpretation of its own statute and regulations. See *Smiley* v. *Citibank (S.D.), N.A.,* 517 U.S. 735, 739-742 (1996); *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984).

---

[15]It must be observed that the court in *Tierney* v. *Schweiker,* 718 F.2d 449 (D.C. Cir. 1983), restricted its holding toward the end of its opinion. The court stated:

> "Our holding today is limited. We conclude that the form sent out by the Social Security Administration and signed by almost 3 million individuals does not meet the 'consent' requirement of subsection 6103(c) of the Internal Revenue Code. We intimate no views on whether another form — one which contains no veiled threats and sets forth the substantive and procedural rights of Benefits recipients — could result in knowing and voluntary consent."

*Id.* at 456.

## IV

For the reasons stated in this opinion, the Superior Court's orders compelling the defendants to execute amended IRS Form 8821 are affirmed.

*So ordered.*